UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

     -v-                                              No.  18-CR-319-LTS

SAMANTHA BATISTA,

          Defendant.

--------------------------------------------------------x

MEMORANDUM ORDER

The Court has received Defendant Samantha Batista's pro se motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Docket Entry No. 269, the "Motion.")  On September 5, 2019, upon pleading guilty, Ms. Batista was convicted of one count of using, carrying, and possessing a firearm which was brandished, and aiding and abetting that conduct, during, in relation to, and in furtherance of a robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and 2.  (Docket Entry No. 157.)  On January 16, 2020, the Court sentenced her principally to the mandatory minimum 84 months of imprisonment, to be followed by a three-year supervised release term.  (Docket Entry No. 207.)  Ms. Batista is currently incarcerated at the Federal Correctional Institution ("FCI") Danbury (a low security correctional facility in Connecticut), and is due to be released from Bureau of Prisons ("BOP") custody on October 10, 2024.  (Motion at 1-2; Docket Entry No. 273 ("Opp.") at 1.)  See also BOP, Find an inmate, https://www.bop.gov/inmateloc/ (last visited October 19, 2020).

Ms. Batista seeks immediate release to home confinement, arguing that her medical conditions (including obesity and asthma, and her status as a former smoker) place her at a high risk of suffering severe manifestations of illness related to COVID-19, and therefore constitute "extraordinary and compelling reasons" to reduce her sentence.  (Motion at 1-2;

Docket Entry No. 295 ("Reply") at 1-2.)  On September 11, 2020, the Government filed its

opposition to the Motion.  Ms. Batista filed her reply on September 21, 2020.  The Court has

reviewed the parties' submissions carefully and, for the following reasons, Ms. Batista's Motion

is denied.


DISCUSSION

Ms. Batista seeks an order directing her compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully
> exhausted all administrative rights to appeal a failure of the Bureau of
> Prisons to bring a motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the defendant's
> facility, whichever is earlier, may reduce the term of imprisonment . . .
> after considering the factors set forth in section 3553(a) to the extent that
> they are applicable, if it finds that . . . extraordinary and compelling
> reasons warrant such a reduction . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-169).[1]  The Court therefore considers

"the factors set forth in section 3553(a) to the extent that they are applicable," and then

considers, in light of those factors, whether the defendant's proffered "extraordinary and

compelling reasons" for a sentence reduction warrant such a reduction.  The Court may consider

"the full slate of extraordinary and compelling reasons that an imprisoned person might bring

before [it] in motions for compassionate release" in determining whether those reasons warrant a

sentence reduction.  United States v. Brooker, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d

Cir. Sept. 25, 2020).[2]  "The defendant has the burden to show [she] is entitled to a sentence

---

[1]     The Government does not dispute that Ms. Batista has satisfied section 3582(c)(1)(A)'s
exhaustion requirement.  (See Docket Entry Nos. 286, 292.)

[2]     As the Second Circuit's decision in Brooker made clear, "district courts are not bound by
the policy statements issued by the Sentencing Commission" in determining whether

reduction" under Section 3582(c)(1)(A).  United States v. Ebbers, 432 F. Supp. 3d 421, 426

(S.D.N.Y. 2020).

The Court's consideration of the section 3553(a) factors at the time of Ms.

Batista's sentencing hearing, on January 16, 2020, is reflected in the transcript of that hearing.

(Docket Entry No. 207, "Sent. Tr.").[3]  As to the nature and circumstances of the offense, the

Court noted that Ms. Batista, together with others associated with a drug trafficking organization

known as the "200" enterprise

> participated in a practice known as breaking in which members would
> pass off fake drugs or fake money in exchange for real money or real
> drugs.  She also on occasion planned and helped carry out other
> operations, in particular the one that has brought us here today was her
> participation in planning and helping to carry out an extremely violent
> home-invasion robbery in northern Manhattan.  This robbery caused
> severe, life-threatening injuries to the victims, who will likely continue to
> suffer from injuries for years to come.  Ms. Batista was the driver for the
> robbery crew and she did not directly carry out the acts of violence, but
> her actions were among those that made the crime possible.

---

reasons are "extraordinary and compelling."  United States v. Bary, No. 98-CR-1023
(LAK), 2020 WL 5946985, at *2 n.12 (S.D.N.Y. Oct. 7, 2020) (citing Brooker, 2020 WL
5739712, at *6).

[3]     The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and
circumstances of the offense and the history and characteristics of the defendant; (2) the
need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; (B) to afford adequate
deterrence to criminal conduct; (C) to protect the public from further crimes of the
defendant; and (D) to provide the defendant with needed educational or vocational
training, medical care, or other correctional treatment in the most effective manner; (3)
the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ;
(5) any pertinent policy statement [issued by the Sentencing Commission in effect on the
date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities
among defendants with similar records who have been found guilty of similar conduct;
and (7) the need to provide restitution to any victims of the offense."  18 U.S.C.A.
§ 3553(a) (Westlaw through P.L. 116-169).

(Sent. Tr. at 11.)  The Court also considered Ms. Batista's history and characteristics, including a traumatic childhood, a history of substance abuse and depression, a limited criminal history before her participation in the 200 enterprise, and her role as a caretaker to her mother and eight-year old son.  (Id. at 11-13.)  The Court also considered Ms. Batista's progress while in custody, including her completion of two training programs, her success in securing a general education diploma, and her lack of disciplinary history.  (Id.)  The Court weighed the need for punishment and specific and general deterrence as well.  (Id. at 14.)  After having considered these factors, the Court sentenced Ms. Batista to a custodial sentence of 84 months (the mandatory minimum), to be followed by three years of supervised release.

In the approximately nine months since Ms. Batista's sentencing, certain new facts relevant to the section 3553(a) analysis of her case have emerged.  Ms. Batista reports that, during her incarceration at the Metropolitan Correctional Center ("MCC")—before her transfer to FCI Danbury—staff at the MCC subjected her to 24-hour-per-day lockdowns during the outbreak of the COVID-19 pandemic, and failed to attend to her medical and psychiatric care. (Reply at 1-2.)  In particular, Ms. Batista proffers that, while she was at the MCC, she had "every COVID-19 symptom," including "dry cough, high fevers, diarrhea, headaches, body aches and short[ness] of breath," but that she received no medical care.  (Id.)[4]  Under section 3553(a)(6), which directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the Court notes that, on September 21, 2020, the Court sentenced one of Ms. Batista's co-defendants—who

---

[4]     In prior correspondence to the Court (Docket Entry No. 255), Ms. Batista also described discrimination and retaliation she alleges to have suffered at the MCC on account of her sexual orientation.  Ms. Batista is no longer at the MCC, and does not allege that such discrimination and retaliation continue at FCI Danbury.

participated in the same violent home invasion as Ms. Batista, and pled guilty to the same charge—to an identical 84-month custodial term, to be followed by five years of supervised release.  (See Docket Entry No. 282.)  Finally, in connection with section 3553(a)(2), the Court considers that Ms. Batista, who was arrested in September 2018, has only served approximately 25 months of her 84-month custodial sentence.

With these section 3553(a) factors in mind, the Court next considers whether extraordinary and compelling reasons warrant a reduction in Ms. Batista's sentence.  18 U.S.C.A. § 3582(c)(1)(A).  Ms. Batista, who is 28 years old, claims principally that her medical conditions of asthma and obesity, and her status as a former smoker, place her at a heightened risk of severe illness from COVID-19 and, in conjunction with her incarceration at FCI Danbury, where she is housed in a dormitory-type unit, constitute extraordinary and compelling reasons which warrant such a sentence reduction.[5]

The Centers for Disease Control and Prevention ("CDC") has identified "moderate-to-severe" asthma as a condition that "might" place individuals at a higher risk of severe illness from COVID-19.  See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("CDC Guidance") (last visited October 19, 2020).  However, there is no evidence that Ms. Batista has either "moderate" or "severe" asthma.  The only references to asthma in her BOP Medical Records are from August 18, 2020, when Ms. Batista reported to medical staff that she had a history of asthma since childhood and requested (and was

---

[5]     In Ms. Batista's August 23, 2020, application for compassionate release to the Warden of FCI Danbury, Ms. Batista also wrote that she suffered from seasonal bronchitis.  (Docket Entry No. 286 at 2.)  Her Motion to this Court does not mention that condition, which is not reflected in her medical records.

prescribed) an inhalant.  (Medical Records at 85, 88.)[6]  However, medical staff's "review of [Ms. Batista's] records demonstrated no evidence of [her] ever being enroll[ed] into chronic care for pulmonary," and Ms. Batista reported that her last asthma attack was "2 to 3" years ago and that "she had never reveal[ed] this malady to anyone in medical at Danbury, nor at MCC-New York." (Id.)  Moreover, the presentence report prepared in Ms. Batista's case, dated November 27, 2019, does not mention any asthma condition, and reports only that Ms. Batista believed she was in "good health."  (Docket Entry No. 174 ("PSR") ¶ 66.)

Ms. Batista's body mass index ("BMI") of 34.6 kg/m$^2$ and her status as a former smoker, however, are recognized risk factors according to the CDC's guidance.  Her BMI, while not "severe" according to that guidance (which treats a BMI greater than 40 kg/m$^2$ as "severe" obesity), places Ms. Batista at an increased risk of severe illness from the virus that causes COVID-19.  See CDC Guidance.  Her status as a former smoker may do the same, see id., although it is not clear whether Ms. Batista's history as a smoker involved cigarettes, which are the subject of the CDC's guidance, or marihuana.  (See Medical Records at 26, 116 (reflecting a history of "weekly" marihuana use); PSR ¶¶ 63, 69 (reflecting a history of "daily" marihuana use).)[7]  See also United States v. Elliott, No. 17-CR-128 (ARR), 2020 WL 4381810, at *4 (E.D.N.Y. July 31, 2020) (denying motion for compassionate release where a defendant claimed

---

[6]     The Court will file Ms. Batista's detailed medical records, which the Government submitted directly to chambers with a copy to Ms. Batista, under seal.

[7]     The CDC provides that "[t]he use of drugs by smoking or vaping (e.g., heroin, crack cocaine, marijuana) can make chronic obstructive pulmonary disease (COPD), asthma, and other lung conditions worse," but does not separately identify a history of smoking marihuana as a significant risk factor for severe illness from COVID-19.  CDC, COVID-19 Questions and Answers: For People Who Use Drugs or Have Substance Use Disorder, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/other-at-risk-populations/people-who-use-drugs/QA.html (last visited October 19, 2020).

to have a history of smoking cigarettes, but his medical history and presentence report reflected only a history of smoking marihuana, and other factors militated against his release).

Even assuming that both Ms. Batista's BMI and her history as a smoker independently increase her risk of severe illness from COVID-19, however, those conditions alone do not automatically render her situation extraordinary and compelling so as to warrant a reduction in her sentence, even in light of the COVID-19 pandemic.  See, e.g., United States v. Anguiera, No. 11-CR-116 (WMS), 2020 WL 3424530, at *4-7 (W.D.N.Y. June 23, 2020) (denying motion for compassionate release where a 37 year old defendant alleged that his obesity, asthma, and history as a smoker warranted release, notwithstanding his detention at a COVID-19 "hotspot"); United States v. Santiago, No. 92-CR-563 (BMC), 2020 WL 2475068, at *1 (E.D.N.Y. May 13, 2020) (denying motion for compassionate release on exhaustion grounds and on the merits where a 48 year old defendant alleged that his obesity, myocardial disease, hyperlipidemia, cardiovascular disease, and history as a smoker placed him at a heightened risk of severe illness from COVID-19).  In this case, two other factors, in addition to the serious nature of her crime and the punishment and deterrence considerations that the Court examined in imposing her sentence, weigh against a finding that Ms. Batista's medical conditions amount to exceptional and compelling reasons warranting a reduction in her sentence: her age, and FCI's Danbury's response to the COVID-19 pandemic.

First, at 28 years old, Ms. Batista is in an age group with relatively lesser risk of hospitalization or death from COVID-19.  According to the CDC, persons between the ages of 18 and 29 are one half as likely to be hospitalized as a result of COVID-19 as those between the ages of 30 and 39, one third as likely as those between 40 and 49, one fourth as likely as those between 50 and 64, and one fifth as likely as those between 65 and 74.  CDC, COVID-19

<u>Hospitalization and Death by Age</u>, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last visited October 19, 2020). Death resulting from COVID-19 is even less common among those between the ages of 18 and 29, occurring at one fourth the rate of those between the ages of 30 and 39, one tenth the rate of those between 40 and 49, one thirtieth the rate of those between 50 and 64, and one ninetieth the rate of those between 65 and 74.  <u>Id.</u>[8]  Ms. Batista's age therefore places her at a relatively lower risk of hospitalization or death resulting from COVID-19.  <u>See</u> <u>also</u> <u>United States v. Brown</u>, No. 18-CR-190-3 (VB), 2020 WL 4548045, at *2 (S.D.N.Y. Aug. 6, 2020) ("Brown is twenty-seven years old.  She is not elderly or infirm.  She does have asthma and is obese, and individuals with those conditions are at risk for serious complications from COVID-19.  However, her medical records (submitted by both the government and defendant) show that BOP medical staff has routinely monitored and appropriately managed Brown's health.  Moreover, she does not suffer from diabetes, hypertension, or any serious heart ailments—conditions that would place Brown at a higher risk of complications from COVID-19.  In short, her health is stable."); <u>Elliott</u>, 2020 WL 4381810, at *5 (declining to find extraordinary and compelling reasons warranting release based on a defendant's obesity, in part because that defendant was only 33 years old); <u>United States v. Toro</u>, No. 19-CR-299 (AT), 2020 WL 3472430, at *2 (S.D.N.Y. June 25, 2020) ("At 30 years old, Defendant is not in the age group of individuals at higher risk of serious illness from COVID-19.").

---

[8]     According to data maintained by New York City, since March, adults between the ages of 18 and 44 have died of COVID-19 at a rate of 22.23 per 100,000 people, as compared to rates of 210.21 per 100,000 (for adults aged 45-64), 681.57 per 100,000 (for adults aged 65-74), and 1,725.86 per 100,000 (for adults over the age of 75).  NYC Health, <u>COVID-19: Data</u>, https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited October 19, 2020).

Second, while Ms. Batista correctly notes that FCI Danbury was once the scene of a substantial number of COVID-19 infections (see Motion at 1-2; Reply at 2),[9] the facility appears to have since gained control of the virus.  As of today, FCI Danbury reports only two inmates and no staff members with COVID-19 infections, see BOP, https://www.bop.gov/coronavirus/ (last visited October 19, 2020), a figure which has remained stable since the Government filed its opposition on September 11, 2020.  (Opp. at 10.)  See also United States v. Garrison, No. 12-CR-214 (ER), 2020 WL 5253219, at *2 n.4 (S.D.N.Y. Sept. 3, 2020) ("As of the date of this Order, at FCI Danbury, there is no active case of COVID-19, one inmate death has been attributed thereto, and 149 inmates and staff members have recovered from the virus.").  It also appears that FCI Danbury is taking steps to monitor for any potential reemergence of COVID-19: Ms. Batista's Medical Records reveal that since May, medical staff have taken her temperature and asked her whether she had any typical COVID-19 symptoms

---

[9]     FCI Danbury's early struggles to control the spread of COVID-19 are detailed in United States v. Somerville, No. 2:12-CR-225 (NR), 2020 WL 2781585 (W.D. Pa. May 29, 2020), a case relied on by Ms. Batista, which noted at the time that FCI Danbury was "facing one of the worst outbreaks of COVID-19 in the federal system," and Martinez-Brooks v. Easter, No. 3:20-CV-569 (MPS), 2020 WL 2405350 (D. Conn. May 12, 2020), a class action in which the district court entered a temporary restraining order requiring officials at FCI Danbury to individually consider, for release to home confinement, each inmate at FCI Danbury whose medical condition(s) placed him or her at a heightened risk of severe illness from COVID-19.  On August 11, 2020, the Easter court certified, for settlement purposes, a class of persons incarcerated at FCI Danbury who "possess one or more medical conditions which, according to current [CDC] guidance, either (i) places [him or her] at increased risk of severe illness from COVID-19; or (ii) might place [him or her] at an increased risk of severe illness from COVID-19," as to whom FCI Danbury would perform—to the extent it had not done so—an individualized review of each inmate for possible release to home confinement.  Whitted v. Easter, No. 3:20-CV-569 (MPS), 2020 WL 4605224, at *4-6 (D. Conn. Aug. 11, 2020).  The Easter court finally approved that settlement class on September 18, 2020.  See Order, Whitted v. Easter, No. 3:20-CV-569 (MPS) (D. Conn. Sept. 18, 2020), ECF No. 221.

every few days (Medical Records at 122-25), and she has been tested on multiple occasions for COVID-19.  (Id. at 144-55.)[10]  While the Court agrees with Ms. Batista that individuals in a prison setting like FCI Danbury are not able to practice social distancing and hygiene to the same extent as if they were not incarcerated (see Reply at 2), the Court also takes into account FCI Danbury's more recent success in controlling the spread of COVID-19.  See also United States v. Howell, No. 3:17-CR-151 (SRU), 2020 WL 5548836, at *4 (D. Conn. Sept. 16, 2020) (denying compassionate release motion by 43 year old who claimed he had asthma, who was only 24 months into a 66 month sentence, in part because the BOP's measures to control the virus "appear to have been effective at Danbury"); United States v. Gonzalez, No. 3:15-CR-00223 (MPS), 2020 WL 5793304, at *4 (D. Conn. Sept. 29, 2020) (denying 43 year old inmate's motion for compassionate release from FCI Danbury, despite inmate's obesity).

   Having considered the applicable section 3553(a) factors, Ms. Batista's medical conditions, as well as the surrounding circumstances at the facility in which she is currently in custody, the Court concludes that extraordinary and compelling reasons do not currently warrant a reduction in Ms. Batista's sentence.

---

[10] There is no indication in the record whether Ms. Batista has ever been tested for COVID-19 antibodies, in an effort to determine whether her COVID-19-like symptoms at the MCC were, in fact, a result of COVID-19 infection.

CONCLUSION

For the reasons set forth above, Ms. Batista's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is denied.  An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.

Docket Entry No. 269 is resolved.

SO ORDERED.

Dated: New York, New York
        October 19, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

**Copy mailed to:**

Samantha Batista, Reg. No. 86154-054
FCI Danbury
Federal Correctional Institution
Route 37
Danbury, CT 06811