UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                          No.  18-CR-319-LTS-7

SAMANTHA BATISTA,

        Defendant.

--------------------------------------------------------x

MEMORANDUM DECISION AND ORDER

        The Court has received Defendant Samantha Batista's renewed motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (docket entry no. 427 ("Motion")), as well as appointed counsel's memorandum in support of that motion.  (Docket entry no. 464 ("Def. Mem.").)  On September 5, 2019, upon pleading guilty, Ms. Batista was convicted of one count of using, carrying, and possessing a firearm which was brandished, and aiding and abetting that conduct, during, in relation to, and in furtherance of a robbery, in violation of 18 U.S.C. sections 924(c)(1)(A)(i), (ii) and 2.  (Docket entry no. 157.)  On January 16, 2020, approximately two months before the President of the United States declared a nationwide emergency in response to the COVID-19 pandemic, the Court sentenced her principally to the mandatory minimum term of 84 months of imprisonment, to be followed by a three-year supervised release term.  (Docket entry no. 207.)  Ms. Batista is currently incarcerated at the Federal Correctional Institution ("FCI") Tallahassee (a low security correctional facility in Florida), and is due to be released from Bureau of Prisons ("BOP") custody on February 8, 2025.  See BOP, Find an inmate, https://www.bop.gov/inmateloc/ (last visited June 6, 2022).

        Ms. Batista seeks immediate release to home confinement, arguing principally that her experience in custody during the COVID-19 pandemic, her physical and mental health

conditions, and alleged mold and asbestos at FCI Tallahassee together amount to "extraordinary and compelling reasons" warranting a reduction in her sentence.  The Court has reviewed the parties' submissions[1] carefully and, for the following reasons, Ms. Batista's Motion is granted to the extent that her sentence is reduced by a period of twenty (20) months, and the Motion is otherwise denied.

D<span style="font-variant:small-caps">ISCUSSION</span>

Ms. Batista seeks an order directing her compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-129).[2]  The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then

---

[1]     (See docket entry nos. 427, 432, 438, 446, 464, 474, 478, 499, 501, 529, 531.)

[2]     Ms. Batista has made at least two such administrative requests for a reduction in sentence.  (See docket entry nos. 286, 432 (at ECF page 3), 501.)  While those requests did not mention each and every ground on which Ms. Batista seeks a reduction in sentence, they did raise Ms. Batista's medical conditions and the COVID-19 pandemic generally, which form in substantial part the basis of the pending Motion.  Even to the extent section 3582(c)(1)(A) requires a movant to separately exhaust each issue he or she proffers as a basis for a reduction in sentence—a question as to which courts disagree, compare United States v. Delgado, No. 19-CR-732-KMW, 2022 WL 252064, at *2 (S.D.N.Y. Jan. 27, 2022) ("The Court joins the majority of district courts that have addressed issue exhaustion and concludes that it is not required.") with United States v. Gotti, No. 02-CR-743-07-CM, 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) ("a defendant must show administrative exhaustion with respect to the specific basis for

considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "The defendant bears the burden of proving that [s]he is entitled to compassionate release under 18 U.S.C. § 3582(c)." United States v. Phillibert, 557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021).[3]

The Court's consideration of the section 3553(a) factors[4] at the time of Ms. Batista's sentencing hearing, on January 16, 2020, is reflected in the transcript of that hearing (docket entry no. 207 ("Sent. Tr.")), and was summarized in the Court's Memorandum Order dated October 19, 2020 (docket entry no. 303 ("2020 Order")), denying Ms. Batista's first

---

relief upon which he is relying")—Ms. Batista's exhaustion of central issues forming the basis of her request satisfies section 3582(c)(1)(A)'s requirement in this case.

[3] That Ms. Batista was sentenced to a mandatory minimum term does not bar the Court from reducing her sentence pursuant to section 3582(c)(1)(A). See United States v. Halvon, 26 F.4th 566, 570 (2d Cir. 2022) ("We now explicitly hold that a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release.").

[4] The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-129).

motion for a reduction in sentence.[5]  As the Court recognized, Ms. Batista's conviction resulted in large part from her participation as the driver for a crew of individuals who carried out an extremely violent home-invasion robbery in Manhattan, resulting in life-threatening injuries to the victims of that robbery.  (2020 Order at 3-4.)  After considering the seriousness of her offense as well as certain mitigating circumstances, including Ms. Batista's "traumatic childhood, a history of substance abuse and depression, a limited criminal history before her participation in [this offense], [ ] her role as a caretaker to her mother," and her "progress while in custody," the Court sentenced Ms. Batista to the mandatory minimum custodial sentence of eighty-four months, to be followed by three years of supervised release.  (Id.)

In the nearly twenty-nine months since Ms. Batista's sentencing—and the nearly twenty months since the Court's 2020 Order—certain facts relevant to the Court's section 3553(a) analysis of her case have developed.  As discussed in greater detail below, inside Ms. Batista's facilities, the intermittent lockdowns and restrictions imposed by the BOP in response to the COVID-19 pandemic have continued, rendering her conditions of incarceration harsher and more punitive than they would have been in the absence of the pandemic, and limiting her access to educational and other rehabilitative resources.  (Motion at 3; docket entry no. 432 at 1; Def. Mem. at 6-9.)  Furthermore, the Court later sentenced several of Ms. Batista's co-defendants to custodial terms reflecting that their time in custody had been and would be more challenging in pandemic circumstances than it would be under non-pandemic circumstances.  (See, e.g., docket entry no. 504 at 29:3-7 ("The Court takes into account these unusually harsh conditions of detention, principally, but not exclusively, caused by the COVID-19 pandemic in

---

[5]     The Court assumes the reader's familiarity with the 2020 Order, which the Second Circuit affirmed in a Summary Order dated December 15, 2021.  United States v. Fertides, No. 20-3809-CR, 2021 WL 5918301 (2d Cir. Dec. 15, 2021).

fashioning an appropriate sentence for Mr. Calderon."); docket entry no. 430 at 29:7-13 ("[S]ince approximately the second quarter of 2020, Mr. Fertides has been detained in the context of the COVID-19 pandemic in conditions of confinement that have been far more challenging and harsher than the typical federal conditions of custody in a non-pandemic setting.").) Among those whom the Court sentenced after Ms. Batista was her co-defendant Domingo Tolentino, who participated in a more direct fashion (by carrying a fake gun into the residence and helping to restrain the victims) in the robbery for which Ms. Batista was convicted, and who was sentenced, six months after the declaration of the nationwide COVID-19 emergency, to an identical mandatory custodial sentence of 84 months. (Docket entry no. 301 at 15:3-10, 19:17-19.) Finally, since the Court's 2020 Order, Ms. Batista's mother—with whom Ms. Batista was very close, and as to whom she had previously served as the primary caretaker—passed away. (Def. Mem. at 10-11; docket entry no. 438 Ex. A.) Finally, particularly in connection with section 3553(a)(2)(A) and (B), the Court considers that Ms. Batista, who was arrested in September 2018, has served approximately 45 months of her 84-month custodial sentence.[6]

With these section 3553(a) factors in mind, the Court next considers whether extraordinary and compelling reasons warrant a reduction in Ms. Batista's sentence. 18 U.S.C. § 3582(c)(1)(A). Ms. Batista proffers as principal extraordinary and compelling reasons the COVID-19 pandemic (including its effects on her conditions of incarceration), her health

---

[6]     The Court has also considered Ms. Batista's disciplinary records (docket entry no. 529 Ex. A), which reflect Ms. Batista's participation in physical altercations while in custody. According to defense counsel, these altercations resulted from other inmates' harassment and/or aggression towards Ms. Batista. As a result of her disciplinary incidents, she has lost good time credit on at least two occasions. The Court concludes that in light of the parties' competing narratives concerning Ms. Batista's disciplinary incidents and the fact that she has already lost good time credit as a result of them, this history does not weigh substantially in favor of or against her pending motion for a reduction in sentence.

conditions (which place her at an increased risk of severe illness from COVID-19), and mold and asbestos conditions at FCI Tallahassee.  (Def. Mem. at 3-11.)

The COVID-19 pandemic has "subjected all inmates to far more restrictive conditions of confinement than normal incarceration."  United States v. Robles, 553 F. Supp. 3d 172, 182 (S.D.N.Y. 2021).  See also id. ("It has limited inmates' access to visitors such as family, to counsel, and to rehabilitative, therapeutic, and recreational programs. And it has given rise to fears of infection and worse by inmates. In these respects, the pandemic has spawned conditions of confinement far more punishing than what could have been expected at the time of [the defendant's] sentencing.").  Even as compared to the experiences of her fellow inmates, moreover, Ms. Batista's experience in custody has been unusually challenging.

As explained in the Court's 2020 Order, Ms. Batista served the first several months of her custodial term at the Metropolitan Correctional Center ("MCC"), where, after the arrival of COVID-19, she was subject to 24-hour-per-day lockdowns, experienced a lack of medical and psychiatric care, and suffered "every COVID-19 symptom" without the receipt of medical attention.  (2020 Order at 4.)  This experience was consistent with that of several other inmates at the MCC who received neither medical care nor any response to their requests for such care for days or weeks during the initial outbreak and lockdown at the MCC.  See Fernandez-Rodriguez v. Licon-Vitale, 470 F. Supp. 3d 323, 331-40 (S.D.N.Y. 2020) (summarizing the MDC's response to the initial outbreak of COVID-19); see also id. at 350 ("Rather than having a functioning sick-call system, the MCC admits it entirely failed to review inmates' electronically submitted complaints due to neglect in staffing of the sick-call inbox.").  The initial months after COVID-19's arrival in New York City were a frightening time for all New Yorkers, and were particularly frightening for those in custody.

Next, in the summer of 2020, Ms. Batista was designated to FCI Danbury in Connecticut.  (Docket entry no. 269.)  That facility had just faced "one of the worst outbreaks of COVID-19 in the federal system," United States v. Somerville, 463 F. Supp. 3d 585, 588 (W.D. Pa. 2020), with many courts and even Attorney General William Barr noting the high levels of infection at the facility early in the pandemic.  United States v. Rasberry, No. 2:15-CR-00127-JDL, 2020 WL 3977614, at *2 (D. Me. July 14, 2020) (collecting cases and commentary), reconsideration denied, No. 2:15-CR-00127-JDL, 2021 WL 1583080 (D. Me. Apr. 22, 2021). The situation improved for a time (see 2020 Order at 9-10), but the facility experienced another outbreak in December 2020.  See The New York Times, Vulnerable Inmates Left in Prison as Covid Rages, https://www.nytimes.com/2021/02/27/health/coronavirus-prisons-danbury.html (last visited June 6, 2022) ("In December, cases at Danbury rebounded as more than one in 10 inmates at the complex tested positive for the virus.").

In mid-2021, Ms. Batista was transferred to FCI Tallahassee (docket entry no. 438 Ex. A), where the COVID-19 pandemic continued to affect her conditions of incarceration.  In the summer and fall of 2021, the Delta variant of COVID-19 arrived at FCI Tallahassee, resulting in, according to Ms. Batista, quarantines, the hospitalization of several inmates, a shortage of testing supplies, and the prison "stop[ing] taking inmates to the hospital because they ran out of correctional staff to perform security at the hospital."  (Docket entry no. 432.)  At least two inmates, one of whom lived "across the hall" from Ms. Batista (id.), died, apparently of COVID-19-related complications.  BOP, Inmate Death at FCI Tallahassee, https://www.bop.gov/resources/news/pdfs/20210915_press_release_tal.pdf (last visited June 6, 2022); BOP, Inmate Death at FCI Tallahassee, https://www.bop.gov/resources/news/pdfs/20211020_press_release_tal.pdf (last visited June 6,

2022).  As of November 2021, Ms. Batista reported that her facility remained "on lockdown due to the virus."  (Docket entry no. 432.)  As of the date of this writing, both the total number of positive COVID-19 tests and the positivity rate of total tests taken in Florida are elevated yet again, see Johns Hopkins University, Daily State-by-State Testing Trends, https://coronavirus.jhu.edu/testing/individual-states/florida (last visited June 6, 2022), FCI Tallahassee is operating at the highest of the BOP's three levels of modified operations (Level 3, "intense modifications"), and the BOP is once again reporting inmates positive for COVID-19 at that facility.  BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited June 6, 2022).

Therefore, as described above and in greater detail in Ms. Batista's submissions, Ms. Batista's experience in custody during the COVID-19 pandemic—at several different facilities, each with its own unique challenges—has been harsher and more punitive than the Court anticipated it would be when Ms. Batista was sentenced, on the eve of the pandemic, in January 2020.

Ms. Batista also has several health conditions—obesity, depression, and a history of smoking—that increase her risk of suffering severe illness if she is infected or reinfected with COVID-19.  See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 6, 2022).  While those conditions alone did not warrant the substantial reduction of Ms. Batista's sentence she requested in 2020 (see 2020 Order at 5-10), they have, Ms. Batista reports, increased her fear of infection during the approximately twenty-

seven months she has been held in custody in pandemic conditions (Def. Mem. at 3-5; docket

entry no. 432 at 1),[7] thereby rendering her experience in custody all the more challenging.

Ms. Batista also proffers in support of her showing of extraordinary and

compelling reasons for a reduction in sentence an alleged ongoing mold and asbestos condition

at FCI Tallahassee, caused by water leaking into her unit and cell and making Ms. Batista and

her fellow inmates ill.  (Def. Mem. at 6 ("Water damage in the housing units is so bad that in

order to sleep in her top bunk on rainy nights, Samantha has to wear a rain poncho."); Motion at

2 ("Defendant and about 150 other inmates are ill due to 24/7 exposure to toxic mold and

asbestos[.]").)  She also reports that her housing unit has a "roof that has been leaking for over 4

years . . . and is full of toxic, black mold [and] full of terminates and roaches" (Motion at 2), and

the result of this condition is that she suffers from "sinusitis, skin irritation, eye irritation, and

cognitive symptoms."  (Id.)  There is no evidence in her medical records that she has reported

such symptoms to her facility's medical staff; Ms. Batista claims that she "is in fear of retaliation

for reporting this matter."  (Id.)

Neither Ms. Batista nor her counsel submit any evidence concerning the mold

and/or asbestos conditions at FCI Tallahassee aside from Ms. Batista's own testimony in the

form of her own letters to the Court and her counsel's representation of her conditions.

However, Ms. Batista is not the only inmate to have reported such conditions.  See Francois v.

Tallahassee FCI, No. 4:20-CV-00554-MW-MAF, 2021 WL 933243, at *1 (N.D. Fla. Feb. 10,

---

[7]     The Court has considered the Government's argument that Ms. Batista's refusal of the
COVID-19 vaccine weighs against her request for a reduction in sentence (docket entry
no. 438 at 9), but concludes that the totality of her experience in custody presents a
sufficient extraordinary and compelling circumstance to warrant to the sentence reduction
granted herein.  The Court strongly encourages Ms. Batista to be vaccinated against
COVID-19 at the earliest opportunity.

2021) ("Plaintiff claims there is black mold in the showers and the unit living areas, a roach infestation in the food service areas, asbestos, lead based paint, the water plumbing pipes are not up to code, there is poor air circulation."), report and recommendation adopted, No. 4:20-CV-554-MW-MAF, 2021 WL 929102 (N.D. Fla. Mar. 11, 2021); United States v. Garcia, No. 3:15-CR-0194-B-1, 2021 WL 3269774, at *3 (N.D. Tex. July 30, 2021) (recounting allegations that "Tallahassee FCI 'is covered with toxic mold'; 'is full of termites and roaches'; 'and possibly [has] asbestos'"). Absent any evidence to the contrary, the Court credits Ms. Batista's reports of her own experience in custody in this regard.

In the unique circumstances of this case, the nearly twenty-seven months Ms. Batista has served in custody in pandemic conditions at the MCC, FCI Danbury, and FCI Tallahassee, her health conditions, their associated increased risk of severe illness from COVID-19 and the fear those increased risks have caused her, and her reports of ongoing mold and resulting illness at FCI Tallahassee together amount to extraordinary and compelling reasons warranting a reduction in her sentence to reflect the unexpectedly harsh and challenging conditions of her confinement. See Robles, 553 F. Supp. 3d at 183 ("As courts have widely recognized in granting compassionate release motions since March 2020, the unexpected rigors of incarceration during the pandemic present 'extraordinary and compelling' reasons that can justify a sentence reduction under § 3582(c)(1)(A)."). The Court must therefore determine the length of that reduction. See, e.g., United States v. Lora, No. 16-CR-44-5-KPF, 2022 WL 1055749, at *6 (S.D.N.Y. Apr. 8, 2022) ("a modest additional sentence reduction of ten months is warranted, to account for the severity of the conditions of confinement"); United States v. Dones, No. 3:18-CR-246-JBA, 2021 WL 6063238, at *5 (D. Conn. Dec. 22, 2021) ("the Court will reduce Mr. Dones's sentence [from a term of 100 months] to a term of sixty months to

reflect the extraordinary conditions to which he has been subjected"); United States v. Tucker, No. 13-CR-378-AJN, 2021 WL 3722750, at *4 (S.D.N.Y. Aug. 23, 2021) (reducing 164-month sentence by one year because "the realities of incarceration have changed").

In determining the appropriate length of sentence reduction, the Court considers both the nature of the extraordinary and compelling circumstances as well as the relevant section 3553(a) factors discussed above, as well as Ms. Batista's anticipated release plan.  (Def. Mem. at 10-11.)  The Court concludes that a twenty-month reduction of Ms. Batista's custodial term (from eight-four months down to sixty-four months) will result in a sentence that both provides Ms. Batista an opportunity to prepare herself for a successful transition out of custody and into the community and is sufficient but no greater than necessary to serve the statutory purposes of punishment, specific and general deterrence, and the other purposes set forth in section 3553(a).[8]

---

[8]     The Court appreciates the Government's concerns arising from the fact that Ms. Batista's disciplinary records reflect that Ms. Batista has, during her years in custody, been involved in fights with other inmates.  (Docket entry no. 531.)  However, Ms. Batista has consistently informed the Court of the harassment and aggressive behavior she has suffered in custody, principally on account of her sexuality, which she reports led to these altercations.  (See, e.g., docket entry no. 255; see also docket entry no. 529.)  In this context, the existence of a limited number of physical altercations in Ms. Batista's disciplinary records does not warrant denial of her motion for a reduction in sentence.

<u>CONCLUSION</u>

For the reasons set forth above, Ms. Batista's renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is granted to the extent that the Court reduces the custodial portion of her sentence by twenty months (<u>i.e.</u>, from eighty-four months to sixty-four months).  A form Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.

Docket entry no. 427 is resolved.

SO ORDERED.

Dated: New York, New York
       June 6, 2022

/s/ Laura Taylor Swain_____
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy mailed to:**

Samantha Batista
Reg. No. 86154-054
FCI Tallahassee
Federal Correctional Institution
P.O. Box 5000
Tallahassee, FL 32314